IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-02830-PAB-SKC

KELLY GOODWIN,

    Plaintiff,

v.

AMERICAN HONDA MOTOR CO., INC. and
SEDGWICK CMS,

    Defendants.
_____

# ORDER
_____

This matter comes before the Court on defendant American Honda Motor Company, Inc.'s Motion for Summary Judgment [Docket No. 38].[1] The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[2]

This case arises out of an employment dispute. Plaintiff began working for defendant in 1987. Docket No. 38 at 3, ¶ 3. At all times relevant to this lawsuit, plaintiff was a Senior District Parts & Service Manager ("DPSM") in defendant's Zone 10, which encompasses the states of Colorado, Nevada, Utah, Arizona, New Mexico, Oklahoma, Kansas, Nebraska, Iowa, and West Texas. *Id.*, ¶¶ 4-5. DPSMs are assigned to specific districts within their respective zones and are responsible for improving the

---

[1]"Defendant" is used throughout this order to refer to American Honda Motor Company, Inc.

[2]The following facts are undisputed unless otherwise indicated.

performance of parts and service departments at dealerships within their districts. *Id.*, ¶¶ 6-7. Candidates for DPSM positions are informed during the interview process that travel and relocation are core components of the job. *Id.* at 4, ¶ 12. Conducting in-person visits to dealerships enables DPSMs to build rapport with dealers, personally observe parts and service operations, verify the accuracy of dealer reports, inspect inventory, handle customer complaints, and assess vehicles for problems. *Id.*, ¶ 11. While working as a DPSM, plaintiff spent 80% of his time traveling. *Id.*, ¶ 13.

As part of an effort to reorganize its districts, defendant transferred plaintiff from the Utah/Western Colorado District to the Denver District on or about April 1, 2014. *Id.* at 5, ¶¶ 21-22. Plaintiff lived in a hotel in Denver during the week and commuted back home to Salt Lake City on the weekends. *Id.* at 5-6, ¶ 25. On May 13, 2014, plaintiff experienced a panic attack while visiting a dealership in Thornton, Colorado. *Id.* at 6, ¶ 27. After being taken to a local hospital, plaintiff returned home to Salt Lake City. *Id.*, ¶¶ 28-29. He was diagnosed with anxiety and depression. *Id.*, ¶ 30. Defendant granted plaintiff an initial leave of absence from work through June 23, 2014. *Id.*, ¶¶ 31-32.

On June 18, 2014, plaintiff gave defendant a note from his physician requesting that plaintiff's duties be confined to Salt Lake City until July 30, 2014. *Id.* at 7, ¶ 35. Defendant rejected the proposed accommodation on the basis that it would eliminate an essential function of plaintiff's position, namely, in-person contact with dealerships. *Id.*, ¶ 36.[3] Instead, defendant allowed plaintiff to remain on leave provided that he did

---

[3]Plaintiff disputes this fact in part, stating that he "wanted to get back to work" and that working "would have been therapeutic for him." Docket No. 53 at 6, ¶ 36. Because

2

not continue to work.  *Id.*, ¶¶ 37-39.

Despite defendant's instructions to stop working, plaintiff contacted dealers on or about June 13, 2014 via his personal email.  *Id.*, ¶ 39.  On July 2 and August 1, 2014, defendant granted plaintiffs' requests to extend his leave of absence, thereby continuing plaintiff's leave through the end of August 2014.  *Id.*, ¶¶ 40-41.  On August 20, 2014, plaintiff submitted reasonable accommodation request forms proposing that his duties be confined to Salt Lake City and the surrounding areas.  *Id.* at 8, ¶¶ 43-44; *see also* Docket No. 39-6 at 3.  The forms stated that the anticipated end date of these restrictions was "unknown."  Docket No. 38 at 8, ¶ 44; *see also* Docket No. 39-6 at 3.  On August 29, 2014, plaintiff's treating physician, Dr. Gregory S. Daynes, submitted a note stating that plaintiff had "reached the maximum effectiveness of [his] current treatment" and that it was "imperative that he work remotely and . . . from Salt Lake City."  Docket No. 39-7; Docket No. 38 at 8, ¶ 45.  That same day, defendant's Senior Associate Relations Representative, Catherine Petrillo, informed plaintiff that defendant could not agree to the proposed accommodation.  Docket No. 38 at 8, ¶ 47.  Ms. Petrillo offered plaintiff continued medical leave or reassignment to a Utah-based position as soon as one became available.  *Id.*, ¶ 48.  She also told plaintiff that he was required to stop all work while on leave and that failure to do so would result in his

---

plaintiff's assertions are not responsive to defendant's statement of fact, the fact is deemed admitted for purposes of summary judgment.  *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer § III.F.3.b.iv (requiring a party opposing the motion for summary judgment to "admit or deny the asserted material facts set forth by the movant"); Fed. R. Civ. P. 56(e) (providing that, "[i]f a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

termination. *Id.* at 9, ¶ 49. On September 2, 2014, plaintiff contacted dealers via his personal cell phone and email account. *Id.*, ¶ 50.

On October 6, 2014, plaintiff requested that defendant move the employee working in the Denver-based Collision Select Position into plaintiff's role as DPSM and then transfer the Collision Select position to Salt Lake City where it could be filled by plaintiff. *Id.*, ¶ 53. Defendant did not accept this proposal because the Collision Select position required even more travel than the DPSM position. *Id.*

On October 9, 2014, plaintiff traveled to Colorado and visited at least four dealerships. *Id.*, ¶ 54. After learning of plaintiff's conduct, defendant's Senior Manager of Parts and Service Operations, Bryan Morris, again instructed plaintiff to stop contacting dealers. *Id.* at 9-10, ¶ 56. The next day, plaintiff visited another dealership. *Id.* at 10, ¶ 57.[4] On October 11, 2014, defendant terminated plaintiff's employment. *Id.*, ¶ 58.

Plaintiff filed this lawsuit in the U.S. District Court for the District of Utah on May 26, 2016. Docket Nos. 1-28 at 2. The case was transferred to this Court on November 21, 2016. Docket No. 1. In his complaint, plaintiff asserts claims for age and disability discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, failure to provide reasonable accommodations in violation of the ADA,

---

[4] There is a dispute of fact as to whether plaintiff actually visited the dealer or merely dropped off a report at the dealership without making contact with anyone. *Compare* Docket No. 38-2 at 5, ¶ 18 (stating that plaintiff "ignore[d] [Mr. Morris'] instruction and actually visited more dealers in the Denver area the next day"), *with* Docket No. 38-3 at 42-43, 250:6-11, 257:19-24 (testifying that plaintiff only dropped off a report at the dealership and left).

4

retaliation, and denial of disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Docket No. 5.[5] Defendant moved for summary judgment on all claims on November 17, 2017. Docket No. 38. On December 12, 2017, plaintiff filed a response to defendant's motion for summary judgment, Docket No. 53, to which defendant replied on December 27, 2017. Docket No. 55.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

---

[5]The ERISA claim is the only claim asserted against Sedgwick CMS.

5

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.

If the party moving for summary judgment bears the ultimate burden of persuasion at trial, it must "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp.*, 477 U.S. at 331. This "shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery." *Id.* When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

#### A. Disability Discrimination Claims

Plaintiff asserts two claims for disability discrimination under the ADA: failure to

6

accommodate and discriminatory discharge. Docket No. 51 at 2; Docket No. 53 at 14-18. While there are some differences between the analyses applied to these two claims,[6] a plaintiff seeking to establish a prima facie case under either theory must generally "show that (1) he is disabled as defined under the [ADA]; (2) he is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) he was discriminated against because of his disability." *Adair v. City of Muskogee,* 823 F.3d 1297, 1304 (10th Cir. 2016) (quoting 42 U.S.C. § 12112(a)); *see also Punt*, 862 F.3d at 1050 (stating that employee asserting a failure-to-accommodate claim "must make an initial showing that (1) [he] is disabled; (2) [he] is 'otherwise qualified'; and (3) [he] requested a plausibly reasonable accommodation"). "Discrimination" under the ADA can include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1188-89 (10th Cir. 2003) (quoting 42 U.S.C. § 12112(b)(5)(A)).

Defendant argues that plaintiff cannot establish a prima facie case of discrimination under the ADA because he was not qualified to perform the essential

---

[6]There are two notable differences between disability discrimination and failure-to-accommodate claims: (1) courts apply a modified burden-shifting framework rather than the familiar *McDonnell Douglas* framework to failure-to-accommodate claims, *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017); and (2) failure-to-accommodate claims do not require a showing that the employer's actions were motivated by discriminatory animus, as "the failure to provide a reasonable accommodation to a qualified employee with a disability is inherently 'on the basis of the disability,' regardless of the employer's motivation." *Id.* at 1048 (internal brackets and citation omitted) (quoting 42 U.S.C. § 12112(a)). Given the Court's determination that plaintiff was not qualified, with or without reasonable accommodation, to perform the essential functions of his position, neither of these differences has any bearing on the Court's analysis.

functions of the DPSM position. Docket No. 38 at 11.[7] Specifically, defendant contends that plaintiff was unable to conduct in-person visits to dealerships in the Denver area. *Id.* To determine whether plaintiff was "qualified" to perform the functions of the DPSM position, the Court applies a two-part analysis. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). First, the Court must determine whether plaintiff was able to perform the essential functions of the position. *Id.* If the answer is no, the Court considers whether any reasonable accommodation by the employer would have enabled plaintiff to perform those functions. *Id.* Plaintiff "bears the burden of showing that [he] is able to perform the essential functions of [his] job, with or without reasonable accommodation." *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (citation omitted).

Plaintiff does not dispute that his medical issues rendered him unable to conduct in-person visits to dealers in the Denver area. Docket No. 38 at 8, ¶ 45. He argues, however, that having in-person contact with dealerships was not an essential function of his position as DPSM. Docket No. 53 at 11-14. "Essential functions" are defined as "fundamental" job functions, not "marginal functions of the position." *Davidson*, 337 F.3d at 1191 (quoting 29 C.F.R. § 1630.2(n)(1)). The inquiry into whether a job function is essential "initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement." *Id.* (quoting *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)). "If the employer does require performance of [the function], 'the inquiry will then center around whether

---

[7]Defendant does not dispute that plaintiff's anxiety and depression constituted disabilities under the ADA. Docket No. 38 at 11 n.3.

removing the function would fundamentally alter the position.'" *Id.* (quoting *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995)). In order to determine whether a function is essential, the Court may consider the following factors: "(1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job." *Mason*, 357 F.3d at 1119 (citing 29 C.F.R. § 1630.2(n)(3)). "A particular job duty 'may be essential because the reason the position exists is to perform that function,' [29 C.F.R.] § 1630.2(n)(2)(i), or 'because of the limited number of employees available among whom the performance of that job function can be distributed,' *id.* § 1630.2(n)(2)(ii)." *Hawkins v. Schwan's Home Service Inc.*, 778 F.3d 877, 884 (10th Cir. 2015).

In deciding whether a function is essential, courts "must give consideration to the employer's judgment," but such evidence is not conclusive. *Davidson*, 337 F.3d at 1191. "[A]n employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Id.* (quoting *Echazabal v. Chevron USA, Inc.*, 226 F.3d 1063, 1071 (9th Cir. 2000), *rev'd on other grounds*, 536 U.S. 73 (2002)). Nonetheless, "[p]rovided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." *Id.*

9

Viewing the evidence in a light most favorable to plaintiff, the Court finds that there is no genuine dispute of fact as to whether in-person site visits were an essential function of the DPSM position. Defendant has presented evidence addressing four out of five of the *Mason* factors.[8] As to the first factor, the employer's judgment as to which functions are essential, both Jane Nottbusch and Bryan Morris stated in declarations that "[o]ne of the most essential functions of the DPSM position is face-to-face contact with dealership employees and customers because the majority of parts and service operations' performance is contingent upon customer satisfaction and sales." Docket No. 38-2 at 3, ¶ 12 (Morris declaration); Docket No. 38-4 at 3, ¶ 12 (Nottbusch declaration). Indeed, plaintiff does not dispute that "[v]isiting dealerships in-person allows DPSMs to . . . build[] rapport with dealers . . . , personally observ[e] parts and service operations, verify[] the accuracy of dealer reports, inspect[] the dealer's inventory, handl[e] customer complaints, and assess[] vehicles for problems." Docket No. 38 at 4, ¶ 11. Plaintiff further testified that being at a dealership was one of his "critical" responsibilities as a DPSM. Docket No. 38-3 at 4, 34:9-17; *see also id.* at 3, 32:9-19 (testifying that "[going] to the actual place" and "know[ing] the actual situation" was "one of Honda's tenets").

The second *Mason* factor – pre-existing written job descriptions – also weighs in favor of defendant. The written job description for the DPSM position states that the

---

[8]Although defendant has not cited any evidence specifically addressing the fourth *Mason* factor, such an omission is not dispositive. *See, e.g., Mason*, 357 F.3d at 1120, 1122 (finding that physical attendance at administrative center was essential function of position where defendant presented evidence establishing only "four of the evidentiary factors set forth by the EEOC regulations").

DPSM is a "direct liaison between Honda Parts and Service Field Operations and Honda automobile dealerships" and lists "frequent travel"– defined as "75% of the [t]ime" – among the necessary "Qualifications." Docket No. 38-5 at 1. The evidence shows that the reason for frequent travel is to visit dealerships.

As to the third *Mason* factor, the amount of time spent performing the job function, plaintiff testified, consistent with the job description, that he was traveling to dealerships at least 75% of the time as a senior DPSM and that each visit to a dealership could last anywhere from three to ten hours. Docket No. 38-3 at 5, 19, 43:13-44:18, 114:15-19; *see also* Docket No. 53 at 3, ¶ 13 (admitting that he spent 80% of his time as a DPSM traveling). Finally, it is undisputed that defendant tells all DPSM candidates during the interview process that "travel and relocation are core components of the job." Docket No. 38 at 4, ¶ 12. The *Mason* factors thus support a finding that conducting in-person dealership visits was an essential function of the DPSM position. *See Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kan.*, 691 F.3d 1211, 1214, 1216-17 (10th Cir. 2012) (finding that in-person supervision of offenders was an essential function of plaintiff's position where employer testified that in-person supervision was a "necessary" component of the job, evidence indicated that plaintiff spent between 25% and 50% of her time on site visits, and the job description specified that the position required "considerable fieldwork").

Plaintiff contends that the Court cannot "ignore" his assertions that "how he performed the function of generating sales and customer satisfaction with his dealerships [was] not an essential function of [his] job." Docket No. 53 at 13 (emphasis omitted). However, plaintiff's "own testimony that [he] could perform the essential

11

functions of the . . . position from home is insufficient under Fed. R. Civ. P. 56(c) to create a 'genuine' issue of material fact concerning the essential functions of the . . . position." *Mason*, 357 F.3d at 1121; *see also Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir. 2000) (finding that plaintiff's "self-serving affidavit that [employer] could have restructured his position to eliminate necessary travel" was "insufficient to overcome [employer's] overwhelming evidence to the contrary).[9]

Having concluded that in-person dealership visits were an essential function of the DPSM position, the Court must next determine whether plaintiff could have performed that function with a reasonable accommodation. *See Robert*, 691 F.3d at 1217. "To defeat an employer's motion for summary judgment, the employee must first demonstrate that an accommodation appears reasonable on its face." *Mason*, 357 F.3d at 1122. If that requirement is met, "[t]he burden of production then shifts to the employer to present evidence of its inability to accommodate." *Id.*

Here, plaintiff asserts that he could have performed the essential functions of his position had he been allowed to work remotely from his home office in Utah "on a

---

[9]Plaintiff testified in his deposition that a senior district parts manager, Fred Romey, performed all of his duties remotely and never visited a dealer for a period of two years between 1994 and 2002. Docket No. 53-1 at 8-9, 37:23-38:22. However, plaintiff does not rely on – or even cite to – this evidence in the argument section of his response brief. *See* Docket No. 53 at 11-14. Even if he did, the Court does not find the evidence sufficient to create a genuine dispute of fact as to whether in-person dealership visits were an essential function of plaintiff's position. The period in which plaintiff alleges that Mr. Romey was permitted to perform his duties remotely occurred over a decade before the events at issue in this lawsuit. Moreover, Mr. Romey held the position of district parts manager, not DPSM, which, according to plaintiff, was a combination of the district parts manager and district services manager positions. *See* Docket No. 53-1 at 9-10, 38:7-19, 42:1-5. Mr. Romey's ability to work remotely for a limited period thus has little bearing on whether in-person dealership visits were an essential function of the DPSM position at the time of plaintiff's request for accommodations.

temporary basis until the most effective medication could be discovered." Docket No. 53 at 13-14. However, "an employee's request to be relieved from an essential function of [his] position is not, as a matter of law, a reasonable or even plausible accommodation." *Mason*, 357 F.3d at 1122. As explained above, conducting in-person visits to dealerships in the Denver area was an essential function of plaintiff's position. Because plaintiff's request for an at-home accommodation would have relieved him of that function, it is unreasonable on its face. *See id.* at 1124 (finding that plaintiff's "request for an at-home accommodation [was] unreasonable on its face because it [sought] to eliminate an essential function" of plaintiff's position – namely, physical attendance at employer's administration center).

Plaintiff's emphasis on the temporary nature of the at-home accommodation does not alter this conclusion. *See* Docket No. 53 at 14 (noting that plaintiff was only asking to work from home "on a temporary basis"). Even assuming that plaintiff's communications with defendant support a finding that plaintiff was requesting only a temporary accommodation, plaintiff does not cite any evidence that he provided defendant with an estimated date by which he could have resumed his essential travel duties. *See Robert*, 691 F.3d at 1218 (noting that "[t]he employee must provide the employer an estimated date when she can resume her essential duties" and that failure to do so renders the employer "unable to determine whether the temporary exemption is a reasonable one"). His request for an at-home accommodation was therefore unreasonable as a matter of law. *See id.* (finding that plaintiff's request for leave as an accommodation was unreasonable as a matter of law where "[t]here [was] no evidence in the record that [plaintiff's] employer had any estimation of the date [plaintiff] would

13

resume the fieldwork essential to her position").[10]

Because plaintiff has failed to demonstrate a genuine issue of fact as to whether he was "qualified, with or without reasonable accommodation" to perform the essential functions of his job, *Adair*, 823 F.3d at 1304, defendant is entitled to summary judgment on plaintiff's disability discrimination claims.

### B. Retaliation Under the ADA

The ADA's anti-retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Where, as in this case, a plaintiff relies on

---

[10] According to defendant's statement of undisputed facts, plaintiff requested two alternative accommodations: (1) transfer back to his prior DPSM district in Utah/Western Colorado; and (2) transfer of the Denver-based Collision Select position to Salt Lake City. Docket No. 38 at 7-9, ¶¶ 42, 53. Plaintiff makes no argument that these transfers constituted reasonable accommodations or that they would have enabled him to continue working. *See* Docket No. 53 at 13-16. Moreover, it is undisputed that (1) all positions in Utah for which plaintiff was qualified were filled; and (2) the Collision Select position required more travel than the DPSM position and thus would not have accommodated plaintiff's medical restrictions. Docket No. 38 at 8-9, ¶¶ 48, 53. It is further undisputed that defendant offered to reassign plaintiff to a Utah-based position as soon as one became available. *Id.* at 8, ¶ 48. Finally, defendant's willingness to allow plaintiff to remain on unpaid leave does not render him "qualified" to perform the essential functions of his position because it is undisputed that plaintiff rejected defendant's proposed accommodation of continued leave. *See* Docket No. 38 at 10, ¶ 59; Docket No. 53 at 11, ¶ 59 (stating that it is "[u]ndisputed that Mr. Goodwin did reject American Honda's accommodation of remaining on an unpaid leave of absence" (emphasis omitted)); 29 C.F.R. § 1630.9(d) (stating that if an individual "rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified").

circumstantial evidence to demonstrate retaliation, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007). Under that framework, a plaintiff must first allege sufficient facts to state a prima facie case of retaliation. *Id.* Once that case is established, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer satisfies this burden, a plaintiff must show that the employer's proffered justification is a "pretext masking discriminatory animus." *Id.* (internal quotation marks omitted). The Court assumes, for purposes of summary judgment, that plaintiff has established a prima facie case of retaliation.[11] Nevertheless, plaintiff cannot prevail on his retaliation claim because he has failed to show that defendant's stated reasons for terminating his employment were pretextual.

"A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Foster*, 830 F.3d at 1194 (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) (brackets omitted). Such a showing requires a plaintiff to present "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder" could find those reasons unworthy of belief.

---

[11]To establish a prima facie case of retaliation under the ADA, a plaintiff must show that: (1) he "engaged in a protected activity"; (2) he "was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity"; and (3) "there was a causal connection between the protected activity and the adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1187 (10th Cir. 2016) (internal quotation marks and brackets omitted).

*Proctor*, 502 F.3d at 1209 (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006)).

Defendant asserts that it terminated plaintiff "because he rejected American Honda's reasonable accommodation and violated his leave of absence terms." Docket No. 38 at 16. Plaintiff contends that this proffered justification is unworthy of belief for three reasons: (1) plaintiff was not being "insubordinate" but was instead "resisting [defendant's] efforts to starve him out and to prevent him from being able to do his job"; (2) defendant was attempting to "stymie" plaintiff's efforts to return to work by keeping him on an unpaid leave of absence; and (3) defendant has presented "little" evidence that it prohibited plaintiff from contacting dealers while on leave in order to prevent confusion. Docket No. 53 at 17-18. None of these arguments are persuasive.

As to the first, plaintiff does not actually dispute that he violated the conditions of his medical leave. *See* Docket No. 53 at 17. Defendant told plaintiff, on multiple occasions, that he was not permitted to work while on leave. Docket No. 38 at 7-10, ¶¶ 39, 47, 49, 56. On August 29, 2014, Catherine Petrillo, American Honda's Senior Associate Relations Representative, even told plaintiff that if he did not cease all work, he would be terminated. *Id.* at 9, ¶ 49; *see also* Docket No. 38-6 at 1-2, ¶¶ 2-3. Despite these instructions, plaintiff admits that he continued to contact dealers in person and via his personal email account and telephone number. *See, e.g.*, Docket No. 38 at 7, 8-10, ¶¶ 39, 50, 54, 57. Although plaintiff contends that defendant was attempting to "starve him out" by restricting his access to dealers, he cites no evidence that defendant's actions were motivated by an improper purpose.

Plaintiff's second argument is also unpersuasive. There is no dispute that

16

plaintiff's medical issues prevented him from traveling and conducting in-person visits to dealerships in the Denver area. Docket No. 38 at 8, ¶ 45. Moreover, defendant was not required to permit plaintiff to work remotely – an accommodation the Court has already found to be unreasonable as a matter of law. Defendant's only remaining option was to keep plaintiff on unpaid leave until he was able to perform the essential functions of his position or a Utah-based position became available. *See Robert*, 691 F.3d at 1217 (finding that, "[i]n light of [the plaintiff's] complete inability to perform site visits at the time of her firing, the only potential accommodation [would have been] a temporary reprieve from this essential function" in the form of a brief leave of absence). Contrary to plaintiff's assertion, defendant's offer to extend plaintiff's medical leave demonstrates that defendant was making an effort to accommodate plaintiff, not "stymie" his efforts to return to work.

Finally, plaintiff contends that there is "little competent evidence" to support defendant's claim that it prohibited plaintiff from contacting dealers in order to prevent confusion. The Court disagrees. Jane Nottbusch stated in her declaration that she was informed by Assistant Zone Manager Jim Witzel on September 2, 2014 that "various dealers in [plaintiff's] District . . . were confused as to who should be their DPSM contact because [plaintiff] had contacted them via his personal cell phone number and his personal email account." Docket No. 38-4 at 7, ¶ 27. Plaintiff further testified that one dealer called Mr. Witzel because he "wasn't sure what he was supposed to do" after receiving an unannounced visit from plaintiff. Docket No. 38-3 at 40, 245:11-16. Although plaintiff appears to dispute defendant's assertion that dealers were "[c]onfused as to who should be their DPSM contact," his only argument is that

17

defendant could have prevented any confusion by allowing plaintiff to work remotely. Docket No. 38 at 9, ¶ 51. As the Court has already determined, however, defendant was not required to grant plaintiff's request for an at-home accommodation.

Given plaintiff's failure to demonstrate any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's stated reason for terminating plaintiff's employment, *Proctor*, 502 F.3d at 1209, the Court will grant summary judgment in favor of defendant on plaintiff's retaliation claim.[12]

### C. ADEA and ERISA Claims

Plaintiff does not oppose the granting of summary judgment on his ADEA or ERISA claims. Docket No. 53 at 20. However, the final pretrial order, which was entered on December 12, 2017, states that plaintiff is no longer asserting claims under the ADEA or ERISA. *See* Docket No. 51 at 2. Because the pretrial order "measures the dimensions of the lawsuit," *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003) (internal quotation marks omitted), and any "claims . . . not included in the pretrial order are waived," *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002), plaintiff's ADEA and ERISA claims are no longer part of this case and the Court need not grant summary judgment on those claims.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that American Honda Motor Company, Inc.'s Motion for Summary Judgment [Docket No. 38] is **GRANTED**. It is further

---

[12]Plaintiff's failure to demonstrate pretext constitutes an alternative basis for granting summary judgment in defendant's favor on plaintiff's claim for discriminatory discharge.

**ORDERED** that the complaint [Docket No. 5] is dismissed with prejudice.  It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

DATED September 10, 2018.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge